**Brenda CURRY, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

No. C–1–82–1526.

United States District Court, S.D. Ohio, W.D.

March 26, 1984.

Robert F. Laufman, Cincinnati, Ohio, for plaintiff.

Elizabeth Gere Whitaker, Asst. U.S. Atty., Cincinnati, Ohio, Mary S. Elcano, Washington, D.C., for defendant.

SPIEGEL, District Judge:

This matter came on for hearing on defendant's motion for partial dismissal or in the alternative for partial summary judgment (doc. 21), plaintiff's response (doc. 22) and defendant's reply (doc. 25). Also before the Court is plaintiff's supplemental memorandum (doc. 27) as plaintiff's motion for leave to file this supplemental memorandum was granted (doc. 30). Defendant's motion for a preliminary hearing on its motion pursuant to Rule 12(d), Fed.R. Civ.P., was granted (doc. 26). Plaintiff also filed proposed findings of fact and conclusions of law (doc. 31).

The question presented is whether plaintiff exhausted her Equal Employment Opportunity (EEO) administrative remedies for her 1979 and 1981 claims of discrimination. For reasons that follow, the Court finds that these 1979 and 1981 claims are properly before this Court. Accordingly, defendant's motion is denied.

## I.

Plaintiff, Brenda Curry, a former employee of the United States Postal Service (USPS), brings this action pursuant to § 717 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16, alleging discrimination in employment on the basis of race and physical handicap. Section 717 also applies to handicap discrimination complaints. Section 505(a) of the Rehabilitation Act of 1973, 29 U.S.C. § 794a(a).

Plaintiff contends she was denied on-the-job training and subjected to discriminatory discipline on the basis of her race and physical handicap and in retaliation for EEO complaints that she had filed. In particular, she challenges (1) a May 22, 1979 letter of warning for unscheduled absences [1]; (2) a November 29, 1979 five-day suspension for unscheduled absences subsequently reduced to a three-day suspension; (3) an April 10, 1980 fourteen-calendar-day suspension for failure to maintain a regular schedule; and (4) a discharge for unscheduled absences effective August 25, 1981.

Defendant's motion addresses the May, 1979 warning letter, the November, 1979 suspension, and the August, 1981 discharge. With respect to each of these adverse personnel actions, defendant alleges that plaintiff failed to exhaust her administrative remedies and concludes that the claims based on these actions must be dismissed.

Plaintiff, on the other hand, maintains with respect to both her 1979 claims and her 1981 claims that defendant's failure to make reasonable accomodations for her handicap constituted a continuing violation that excused her from filing an EEO complaint for each violation. With respect to her 1981 claim, plaintiff asserts that defendant's motion should be denied on equitable tolling grounds.[2]

■ The narrow question which we must decide is whether there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law on each of those issues raised by defendant's motion." Rule 56(c), Fed.R.Civ.P. The Court cannot try issues of fact on a Rule 56 motion but is empow-

---

**1.** The complaint refers to a letter of warning dated May 29, 1979. The evidence, however, demonstrates that the letter in question is one from Joseph H. Mitchell to plaintiff dated May 22, 1979 (def. exh. C).

**2.** In addition and also with respect to her 1981 claim, plaintiff maintains that her exhaustion of administrative remedies with respect to the 1980·

adverse personnel action gives this Court jurisdiction to consider subsequent incidents reasonably related to the initial EEO charge. As we conclude that plaintiff's 1979 claims are properly before this Court under a continuing violations theory and that her 1981 discharge is properly before us on equitable grounds, we need not address this argument.

ered to determine only whether there are issues to be tried. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982). The moving party "has the burden of showing conclusively that there exists no genuine issue as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). And while the movant's papers are to be closely scrutinized "those of the opponent are to be viewed indulgently." *Id.* at 63.

## II.

As a preliminary matter we note that defendant has moved to have the USPS dismissed and William F. Bolger, Postmaster General, substituted as defendant. The statute is clear that the proper defendant in a Title VII action against a federal employer is not the department, agency or unit but rather the head of the department, agency or unit. 42 U.S.C. § 2000e–16(c). The motion is granted.

## III.

Brenda Curry was hired by the USPS as an automated mark-up clerk August 28, 1978. Plaintiff testified that before she was hired she disclosed her arthritic condition and that defendant was advised she could not lift more than forty pounds. Her testimony is corroborated by the pre-appointment certificate of medical examination; in a handwritten notation in the box labeled conclusions the examining physician stated "no lifting over 40 lbs" (def. exh. Z). Mark-up clerks are required to lift and carry trays of mail which, according to plaintiff, weigh up to fifty pounds.

Plaintiff advised her supervisor in October, 1978 that lifting the mail trays was aggravating her arthritic condition. She testified that the lifting caused her hands and wrists to swell. She added that the aggravation of her arthritis forced her to take sick time, all of which she alleges was closely monitored by her employer. Plaintiff further testified that she continued to get lifting assignments until her discharge in August, 1981 despite repeated complaints to her supervisors, union and EEO counselor. Plaintiff contends that defendant's action constituted a failure to make reasonable accomodations to her handicap as required by the Rehabilitation Act of 1973 and 29 C.F.R. § 1613.704. Although the testimony just outlined goes to the merits of plaintiff's claims and thus is not at issue at this time, it is important in establishing the context out of which plaintiff's discrimination claims arose.

## IV.

Plaintiff alleged in an informal EEO complaint January 30, 1979 that she had been denied training and details or typing assignments to higher-level position on the basis of race. *See* def. exh. D, informal complaint of discrimination based upon the April, 1980 suspension which states that "complainant ... feels a reprisal ... has been taken against her for filing a previous complaint (1/30/79)." Plaintiff did not pursue the January, 1979 complaint and it is not a part of this lawsuit. It is pertinent, however, in that some of plaintiff's reprisal claims refer to this informal EEO complaint.

Defendant's motion addresses two 1979 adverse personnel actions. The first is a letter of warning dated May 22, 1979 listing twenty unscheduled absences (def. exh. C). Plaintiff did not file an informal complaint with respect to this letter. The second is a five-day suspension which plaintiff received November 29, 1979, also because of unscheduled absences (def. exh. E). Plaintiff did not file an informal complaint with respect to this suspension. Plaintiff did, however, grieve this suspension pursuant to grievance and arbitration provisions of the collective bargaining agreement between the USPS and plaintiff's union. As a consequence the suspension was reduced to three days.

In early April, 1980 plaintiff received notice of a fourteen-day suspension effective April 23, 1980. This fourteen-day suspen-

**338**

sion is not at issue for purposes of the motion as defendant acknowledges that plaintiff exhausted her administrative remedies with respect to this adverse personnel decision. However, the steps taken by plaintiff with respect to this suspension are important for establishing the grounds for her arguments with respect to the 1979 and 1981 actions.

The letter informing plaintiff of the fourteen-day suspension states that the disciplinary action was taken because of plaintiff's failure to maintain a regular schedule and lists the dates of her allegedly unscheduled absences (def. exh. F). On April 9, 1980 plaintiff had an initial interview with EEO Counselor Clarence Johnson. Plaintiff testified that during that interview she told Mr. Johnson that she believed she was denied training because of her race, that the suspension was in retaliation for her earlier EEO charge, and that she was having problems because of the lifting she was required to do. Although Mr. Johnson testified that plaintiff never raised handicap discrimination with him, he also testified that he had no independent recollection of any counseling sessions with her. Consequently, we find the plaintiff's version of what occurred at those sessions more credible.

Mr. Johnson filled out a form labeled "Informal Complaint of Discrimination in the U.S. Postal Service" (def. exh. D), presumably during or shortly after the initial interview. The informal complaint states:

> Complainant alleges continuous racial discrimination for being denied training on the job she was hired for. In addition, she feels a reprisal (5 and 14 day suspension) has been taken against her for filing a previous complaint (1/30/79).

The printed complaint form had a section labeled "Kind of Complaint (check one)" followed by eight boxes. An "X" appears in the box labeled "Reprisal". The typed note, "previous complaint filed 1/30/79" appears next to this box. The boxes labeled "Race or Color" and "Handicap" are not checked.

Plaintiff had a final interview with Mr. Johnson about the fourteen-day suspension May 8, 1980. That fact is noted on the informal complaint. Attached to the complaint are Mr. Johnson's reports of his interviews with plaintiff, her supervisor, and her manager plus a description of Mr. Johnson's efforts at informal resolution.

A "Notice of Final Interview with EEO Counselor" dated May 8, 1980 was issued to plaintiff by Mr. Johnson (def. exh. G). Also a printed form with blanks for the name of the complainant and the date of the final interview, the form contains signature lines for the complainant and the EEO counselor. The notice is signed by the plaintiff and Mr. Johnson. The first two paragraphs of the printed form read as follows:

> You have been advised this date, May 8, 1980, of the determination relative to the matter you presented to the EEO Counselor. If it has not been resolved to your satisfaction, you have the right to file a formal written complaint with the Equal Employment Opportunity Officer, Central Region, Postal Service, Chicago, Illinois 60699.
>
> If you feel that you have been discriminated against because of race, color, religion, sex, age, national origin, or physical or mental handicap you have the right to file a formal complaint in person or by mail. Your written formal complaint must then be filed within fifteen (15) calendar days from this date, which is the date of my final interview with you.[3]

The form then lists the information to be included in the formal complaint.

---

**3.** Although not essential to our decision. we observe that this printed notice is inherently confusing. As we read the form, the two paragraphs appear to refer to two separate complaints. No language suggests that the "Formal Written Complaint" of the first paragraph refers to "the right to file a formal complaint in person or by mail" of the second paragraph. If the Court finds the instructions of this form confusing, how much more confusing must it be for a layperson. Official forms that obfuscate rather than clarify rights stand in stark contrast to the crystal-clear remedial nature of Title VII and the Rehabilitation Act of 1973.

Plaintiff filed a formal EEO complaint on May 16, 1980 (def. exh. I). "EEO Complaint of Discrimination in the U.S. Postal Service," the formal complaint, is also a form. Plaintiff did not designate a representative. With respect to the type of discrimination alleged, she checked the boxes labeled race, reprisal and handicap. Pursuant to the instructions, race is designated as "afro-american," and handicap as "arthritis." The form also instructs the complainant to explain the specific actions resulting in the allegations of discrimination. Plaintiff wrote as follows:

1. Training on both the computers, supervision and all other phases in the unit, which I have requested since November of 1978, has been denied to me based on race. White individuals who had never requested training were given it by J. Mitchell/Ray Linz [plaintiff's supervisors].

2. Complaining to the Union and EEOC has led to 2 (two) suspensions [November, 1979; April, 1980] and a letter of warning [May, 1979]. I charge that Joseph Mitchell, Wm. Lang and Raymond Linz have used my attendance record to suspend me as a reprisal for complaining to EEOC and the Union. Records will show (those that have not been falsified) that other employees with similar records were not treated in a similar manner.

Her description completely fills the available space.

The Postal Service's EEO office investigated plaintiff's formal charge of discrimination, and held an informal settlement meeting May 29, 1981, with plaintiff and her representative.[4] In a report on the meeting EEO specialist Frederick Kelley stated that no resolution was reached (def. exh. K). The district manager proposed a finding of "no discrimination" and so notified plaintiff in a letter dated May 29, 1981 that also advised her of her right to request a hearing by an EEO complaints examiner (def. exh. L). On June 16, 1981 plaintiff requested a hearing (def. exh. M).

On July 10, 1981 while her formal EEO complaint based on the April, 1980 suspension was still pending, plaintiff received notice that her employment would be terminated effective August 25, 1981 (def. exh. V). Plaintiff testified that she tried unsuccessfully to call Clarence Johnson on July 10th. She further testified that when she called again the following week, she was told by the personnel office that Mr. Johnson was away at a training site.

Plaintiff testified that after several more attempts, she finally reached Mr. Johnson by phone in late July or early August at which time she read him the notice of removal. Plaintiff testified that Mr. Johnson told her she did not need to file a new complaint as the formal complaint had not yet been resolved and the discharge could be covered at the EEO hearing. According to plaintiff, even though Mr. Johnson told her it was unnecessary, she made an appointment to see him. She stated that she called him a second time to ask if he was sure she did not need to file a new complaint. Again he assured her that no new complaint was necessary, and that an interview was unnecessary. Plaintiff testified that she called an EEO officer in the Federal Building who gave her the same information. Most of this testimony is corroborated by an affidavit submitted by the

---

4. On June 13, 1980, plaintiff received a notice of suspension for fourteen days (def. exh. R). This suspension is not an issue in this lawsuit. However, plaintiff's actions with respect to the suspension establish that she understood that she was required to seek counseling. On June 27, 1980 plaintiff requested counseling. The informal complaint filled out by Clarence Johnson states that the initial interview was July 9, 1980 and the final interview August 13, 1980 (def. exh. Q). According to the form, plaintiff "alleges discrimination continuous and reprisal for receiving a fourteen-day suspension, a letter of warning, and of a Periodic Step Increase withheld. A "notice of final interview" with EEO counselor dated August 13, 1980 was issued to plaintiff (def. exh. Q). The form, identical to the one dated May 8, 1980 and described above, contains only Mr. Johnson's signature. Plaintiff did not file a formal complaint. She testified that Mr. Johnson told her a formal complaint was unnecessary as her previous formal complaint was still pending.

plaintiff (pl. exh. 1). It is undisputed that plaintiff did not have an initial interview with Mr. Johnson.

Plaintiff also testified that at the time she did not know that Mr. Johnson was a postal employee but rather believed that he worked for the EEOC. In her affidavit she states that because Mr. Johnson was an EEO counselor trained in the proper proceedings, she assumed he knew what he was talking about and, therefore, relied on his advice (pl. exh. 1).

Clarence Johnson testified that he would not have told plaintiff that an EEO case involving an adverse personnel action in 1980 would cover her 1981 discharge. He further testified that to the best of his knowledge he did not so advise plaintiff. *See also* the declaration of Clarence Johnson attached to doc. 21.

Johnson's phone log shows that he did speak with the plaintiff on August 4, 1981, less than thirty days following the notice of removal (pl. exh. 3). Johnson testified, however, that he had no independent recollection of a conversation with the plaintiff on August 4th. He went on to testify that he had no independent recollection of any meetings or conversations with the plaintiff, and that his testimony as to what occurred at various interviews was based upon the forms that he had completed and his own records, all of which were introduced as evidence.

Mr. Johnson further testified that, based on his recollection as refreshed by various documents, he did not recall plaintiff ever alleging handicap discrimination. Complaints of handicap discrimination, according to Mr. Johnson, must be initiated like any other discrimination claim, that is, the employee must initiate the process by seeking counseling. If the employee wishes to file an informal complaint, the counselor requests medical information from the employee's physician. That information is attached to the complaint and both are forwarded to the medical officer who does the appropriate investigation. In complaints alleging other types of discrimination the EEO counselor does the investigation. Mr.

Johnson testified that at no point did he request information from Curry's physician.

Having observed the demeanor and credibility of Ms. Curry and Mr. Johnson, we conclude that Ms. Curry's statement of events is more likely than not the more accurate recital. Given Mr. Johnson's testimony that he had no independent recollection of any of the meetings or conversations with Ms. Curry, we are unable to accept his testimony that he would not have advised her that she did not need to file a complaint with respect to her 1981 discharge. The phone log is undisputed evidence that plaintiff did contact Mr. Johnson within thirty days of her notice of discharge. We find it unlikely that she would have failed to have met with him to initiate the EEO process unless he had assured her that such was not necessary.

Furthermore, we find credible plaintiff's testimony that she was unaware that Mr. Johnson was a USPS employee, believing instead that he was an EEO employee. Defendant did not present any evidence of steps taken by the Postal Service to assure that USPS employees were informed that the EEO counselors were Postal Service employees rather than EEO employees. Ronald Jones, a USPS employee for twenty-one years, also testified that he was unaware that Mr. Johnson was a USPS employee.

In addition, we find credible plaintiff's testimony that she relied on Mr. Johnson's advice. The fact that she filed a formal complaint and requested a hearing on the April, 1980 suspension demonstrates that she knew what procedures were required. We can find no reason to believe that she would not have followed these same procedures with respect to her discharge, a far more serious matter than a suspension, had she not been advised that her discharge could be made part of the pending formal complaint.

■ Moreover, we conclude that plaintiff's reliance on Mr. Johnson's advice was reasonable. Even had she known that Mr.

Johnson was employed by USPS rather than the EEOC, her reliance would have been reasonable, for she had absolutely no basis for not acting on the advice of an experienced EEO counselor with whom she had dealt in the past.

Plaintiff further testified that, believing she could present her complaint relative to her discharge at the formal EEO hearing scheduled for June, 1982, she told her union not to arbitrate the discharge. She also stated that prior to the formal EEO hearing she participated in a conference call with Charletta Tyson-Huff, the EEOC hearing examiner; Jack Panzeca, president of her union; John Panzeca, executive director of her union; Ronald Jones, union steward; and Mr. Abney, a USPS representative. She testified that reinstatement as the basis for settling her claims was discussed, and that no one suggested that she could not pursue her discharge claim at the hearing. This testimony was corroborated by Ronald Jones.

Plaintiff was represented by Ronald Jones at the formal hearing before Ms. Tyson-Huff on June 15, 1982. Plaintiff testified that when she tried to discuss the discharge, she was told the discharge was not a part of the hearing and that all testimony regarding the discharge would be stricken.[5] Plaintiff further testified that after clearing the room, Ms. Tyson-Huff told plaintiff that she could file an amendment to her complaint and that she should talk to someone in the Cleveland EEOC office. The following day, plaintiff called the Cleveland EEO office and was told to contact the Cincinnati office. The person with whom she spoke at the Cincinnati EEO office said he was not aware of an amendment process but in any event such amendment would have to go through Clarence Johnson. Plaintiff further testified that she then called Mr. Johnson, who told her he did not know about amendments. *See also* pl. aff., pl. exh. 1.

## V.

The defendant submits that plaintiff was required to exhaust administrative remedies in accordance with 42 U.S.C. § 2000e–16(c), 29 U.S.C. § 794a(a)(1) and relevant EEOC regulations. Defendant further asserts that plaintiff does not meet the equitable tolling criteria which, in certain circumstances, excuse strict compliance with administrative exhaustion requirements. Defendant also contends that the continuing violation theory is inapplicable to this case.

Section 717 of Title VII provides for district court review of employment discrimination claims brought by federal employees. 42 U.S.C. § 2000e–16. A federal employee who seeks to file a court action based on Title VII or the Rehabilitation Act of 1973 must exhaust administrative remedies promulgated pursuant to section 717 and set forth in EEOC regulations at 29 C.F.R. § 1613.211 *et seq. Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976).

The regulations require that an aggrieved employee seek counseling from an EEO counselor within thirty days of the event giving rise to the charge of discrimination. The counselor shall seek informal resolution, and, insofar as possible, conduct a final interview within twenty-one days of the initial contact. If the matter has not been resolved by the final interview, the counselor shall inform the complainant in writing of the right to file a complaint within fifteen days. 29 C.F.R. §§ 1613.-213(a), 1613.214(a)(1)(i).

After receiving notice of the final interview, the individual may file a written complaint of employment discrimination signed by the complainant. Such a complaint must be filed (1) within thirty days of the event giving rise to the claim of discrimination; and (2) within fifteen days of the date of the final interview. 29 C.F.R. § 1613.-214(a)(1). This complaint is known as the formal complaint.

**5.** Mr. Jones corroborated plaintiff's testimony as to the events at the EEO hearing prior to the point at which Ms. Tyson-Huff cleared the room.

Mr. Johnson testified that when a Postal Service employee seeks counseling, he schedules an initial interview. During that initial interview the counselor advises the complainant of her rights, describes the counselor's role, and completes Form 2570 entitled "Informal Complaint of Discrimination in Federal Government." *See* def. exh. B. In the days following the interview, the counselor investigates the claim of discrimination and attempts informal resolution. At the end of twenty-one days, the counselor schedules a final interview during which he tells the complainant of her right to file a formal complaint and that such a complaint must be filed with the regional EEO office in Chicago. Mr. Johnson stated that Form 2579, entitled "Notice of Final Interview with EEO Counselor," signed by the counselor and by the complainant is given to the complainant at the final interview. *See* def. exh. DD. The counselor does not participate in the execution or filing of a formal complaint.

It is undisputed that plaintiff did not seek counseling with respect to the May, 1979 letter of warning or November, 1979 suspension within thirty days as required by 29 C.F.R. § 1613.214(a)(1)(i). Mr. Johnson's phone log and plaintiff's testimony, however, clearly establish that plaintiff did timely seek counseling on August 4, 1981 with respect to the July 10, 1981 letter of discharge. As an initial interview was never held, there is no informal complaint form or notice of final interview form in the record.

Defendant argues that the thirty-day rule of 29 C.F.R. § 1613.214(a)(1)(i) is jurisdictional. The Seventh Circuit has recently so held, finding that the regulation is one of the terms of the United States' consent to suit in employment discrimination cases and, therefore, defines the district court's jurisdiction. *Sims v. Heckler,* 725 F.2d 1143 (7th Cir.1984).

■ We disagree. Three other Courts of Appeal have held to the contrary, relying on *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), in which the Supreme Court held, in

a case involving a private employer, that the time limit for filing charges is not a jurisdictional prerequisite in a federal court action. *Milam v. United States Postal Service,* 674 F.2d 860 (11th Cir.1982); *Saltz v. Lehman,* 672 F.2d 207 (D.C.Cir.1982); *Cooper v. Bell,* 628 F.2d 1208, 1212–14 (9th Cir.1980). We recognize that none of these cases considered the significance of the sovereign immunity with which a federal employer is clothed. Nonetheless, we are not convinced that the thirty-day limit is jurisdictional. For example, 29 C.F.R. § 1613.214(a)(4) permits the agency to waive the thirty-day requirement if the complainant demonstrates that he is unaware of the thirty-day rule or has good reason for non-compliance, or if the agency concludes that other reasons justify non-compliance. If the thirty-day rule is subject to being waived, it is in the nature of a statute of limitations rather than a jurisdictional requirement, and thus not one of the terms of the United States' consent to suit. *Cooper,* 628 F.2d at 1213.

## VI.

Plaintiff acknowledges with respect to the 1979 adverse personnel actions that she did not file timely informal complaints. She asserts, however, that her claims are properly before this Court because they allege a continuing violation by the USPS.

■ The continuing violations theory provides that where the last act alleged is part of an ongoing pattern of discrimination and occurs within the filing period, allegations concerning earlier acts are not time-barred. *Roberts v. North American Rockwell,* 650 F.2d 823, 827–28 (6th Cir. 1981). Plaintiff must allege a continuing policy which is a clear violation of Title VII or the Rehabilitation Act. 650 F.2d at 827–828. The continuing effect of an alleged act of discrimination, however, is not sufficient; the critical question is whether there is a present violation. *United Airlines, Inc. v. Evans,* 431 U.S. 553, 557–58, 97 S.Ct. 1885, 1888–89, 52 L.Ed.2d 571 (1977); *Trabucco v. Delta Airlines,* 590 F.2d 315, 316 (6th Cir.1979) (*per curiam* ).

In the Sixth Circuit, the test is whether the plaintiff timely filed a charge of a present violation which is part of an ongoing pattern of discrimination. *Roberts,* 650 F.2d at 828. For example, the Court held that a charge filed 330 days after a plaintiff was promoted to her male supervisor's position for one-third less compensation was not untimely because each paycheck constituted a separate discriminatory act, evidence of the continuing violation of Title VII and the Equal Pay Act. *Hall v. Ledex, Inc.,* 669 F.2d 397, 398–99 (6th Cir.1982). *See also Held v. Gulf Oil Co.,* 684 F.2d 427, 430 (6th Cir.1982) in which the Court acknowledged that under *Evans* time-barred events not the subject of a timely charge of discrimination are legally insignificant, but held that the *Evans* rule does not apply where subsequent identifiable acts of discrimination related to the time-barred incidents occur within the critical time period and are made the subject of a timely charge.

Plaintiff here maintains that defendant's failure to make accommodations for her rheumatoid arthritis despite its awareness of the lifting limitations placed on her prior to her appointment constitutes a continuing violation of the Rehabilitation Act of 1973. She argues that each time she was required to lift a mail tray weighing over forty pounds constitutes a separate discriminatory act, and that each of those acts whether prior to or following her 1980 EEO complaint is cognizable under the continuing violations theory.

■ We agree with plaintiff that the 1979 adverse personnel actions are properly in this lawsuit under a continuing violations theory. It is undisputed that defendant knew of plaintiff's handicap and of the lifting restriction. Whether defendant required plaintiff to lift trays weighing more than forty pounds, and if so, whether that requirement violated the Rehabilitation Act are questions for trial. In the meantime, however, the allegations that defendant continued to require plaintiff to lift trays despite its knowledge of her handicap are sufficient to defeat defendant's motion for summary judgment with respect to the 1979 adverse personnel actions.

Defendant insists that the letter and suspension were discrete rather than related instances of discrimination and, therefore, that the continuing violations theory does not apply. It relies on *Milton v. Weinberger,* 645 F.2d 1070, 1075–77 (D.C.Cir. 1981), in which the Court found that the continuing violations theory was not applicable where plaintiff did not allege a continuing violation but rather specific instances of alleged discrimination. Defendant also argues that it should not be required to defend against a continuing violations theory as it had no notice that plaintiff intended to rely on such a theory.

■ The allegations of the complaint, however, are sufficient to put defendant on notice that plaintiff is asserting continuing discrimination that resulted in discrete adverse personnel actions. Paragraphs 9 through 11 allege that plaintiff advised defendant of her limitation, defendant refused to accommodate her handicap and required her to continue the lifting, and as a consequence plaintiff's arthritis was aggravated to such a degree that she was required to take sick leave. Paragraphs 14 and 15 point out that the May, 1979 letter and the November, 1979 suspension were based on plaintiff's alleged failure to maintain a regular schedule. The complaint thus clearly suggests that plaintiff's theory is that defendant's continuing refusal to make accommodations exacerbated her handicap, resulting in absences from work which in turn lead to the adverse personnel actions. That plaintiff did not use the magic words "continuing violations" in the complaint is of no significance.

This case, therefore, is clearly distinguishable from *Milton.* The plaintiffs in that sex discrimination case neither alleged in the complaint nor argued at trial that defendant's acts constituted continuing discrimination, pervasive bias, or unlawful employment practices. 645 F.2d at 1076. Instead, plaintiffs argued that defendant's decision not to select and/or promote them to positions for which they were qualified

were motivated by considerations of sex. The Court found that plaintiffs had not even attempted to establish that these decisions were related and accordingly concluded that the continuing violations was inapplicable. *Id.* In the instant case, the complaint reveals that plaintiff is alleging a continuing pattern of discrimination based on handicap.

▆ The defendant acknowledges that plaintiff's 1980 complaint was timely filed but argues that because the informal complaint does not refer to handicap discrimination there can be no connection between that complaint and the 1979 adverse personnel actions. It is true that the continuing violations theory requires a timely charge of an act of discrimination alleged to be part of an ongoing pattern, *Roberts,* 650 F.2d at 827–28, but we find that plaintiff meets this requirement. As a preliminary matter, we point out that Mr. Johnson testified that the EEO counselor—not the complainant—fills out the informal complaint. Moreover, as discussed above, we found credible plaintiff's testimony that she told Mr. Johnson about the lifting problems when she saw him for counseling about the April, 1980 suspension. Accordingly, we conclude that Mr. Johnson was on notice as to plaintiff's allegations of handicap discrimination. Under these circumstances, we decline to hold plaintiff to the precise language of a document which was prepared by another.

In addition, we find that a careful reading of the informal complaint and supporting documents demonstrates that it does refer to handicap discrimination even though the handicap box is not checked (def. exh. D). For example, page two of the informal complaint indicates that attachment five is a comparison of plaintiff's attendance record with those of other employees. On that same page the EEO counselor describes plaintiff's allegations as, among others, "reprisals for two suspensions received for failure to maintain a regular work schedule." Because plaintiff maintains that her absenteeism was the result of defendant's ᶠailure to make ac-

commodations for her handicap, we find that this is a description of her handicap claim.

Furthermore, plaintiff's claims are obviously interrelated. Although she alleged in 1980 that the 1979 disciplinary actions were taken in reprisal for her January 30, 1979 charge of discrimination, defendant's documentation of the 1979 adverse personnel actions on their face reveal that those actions were based on excessive absences. *See* def. exhs. C, E. We note further that the informal complaint filed in January, 1979 contains no box for handicap discrimination (def. exh. B). Mr. Johnson testified that in 1979 handicap discrimination was a recent development and that the forms had not yet been adapted. He stated, however, that as an EEO counselor he would explain to aggrieved employees that handicap was an area of discrimination. As noted earlier, however, Mr. Johnson testified that he had no independent recollection of any of his conversations with the plaintiff. Therefore, we give little weight to his testimony that plaintiff never complained of handicap discrimination.

We also note that arthritis is not always apparent from mere observation. Having had the opportunity to observe plaintiff, we conclude that Mr. Johnson or any other EEO counselor might reasonably have decided that plaintiff's primary complaints were of race discrimination and reprisals— not handicap discrimination. As a lay person, plaintiff would undoubtedly be guided by an EEO counselor's conclusions about the nature of her complaints. Even more important, it was Mr. Johnson, not the plaintiff, who filled out the informal complaint.

Finally, the box marked handicap is ᶜhecked on the formal complaint which ᵖlaintiff herself filled out following receipt of notice of the final interview (def. exh. H). Defendant refers us to a USPS 1977 memorandum to all EEO investigators in which investigators are instructed that complainants may not be allowed to expand their complaints beyond those allegations brought to the attention of the EEO coun-

selor in a timely manner (def. exh. CC). As already noted, Mr. Johnson's description of plaintiff's allegations can be read to state a charge of handicap discrimination. Subsequent clarification or elaboration of that complaint does not constitute expansion into areas beyond those plaintiff timely brought to Mr. Johnson's attention.

Under all these circumstances we find that a strict reading of an informal complaint completed by an EEO counselor upon whom plaintiff had every reason to rely, would contravene the remedial nature of Title VII and the Rehabilitation Act of 1973.

We recognize that section 717 constitutes the federal government's consent to suits alleging employment discrimination and thus must be narrowly construed. Nevertheless, it is well-established that the continuing violations theory is available in employment discrimination actions by federal employees. *See, e.g., Wilkins v. Walters,* 571 F.Supp. 474 (N.D.Ohio 1983) (Veterans Administration); *Brown v. Brown,* 528 F.Supp. 686 (D.N.J.1981) (Department of Defense); 2 A. Larson & L. Larson, *Employment Discrimination* § 52A.10. Considering all the facts and circumstances surrounding the 1980 informal complaint, we conclude that it would be unjust to confine our reading of that complaint to its precise words merely because the appropriate box was not checked and the counselor's description of plaintiff's allegations are addressed primarily to a different although related form of discrimination. The only reasonable inference to be drawn from the evidence is that plaintiff in fact properly brought her claims of handicap discrimination to the attention of the EEO counselor.

Accordingly, we find that plaintiff's 1980 informal complaint does allege handicap discrimination that is part of an ongoing pattern of discrimination. The adverse personnel actions of 1979 are thus properly before this Court, and defendant's motion with respect to these actions must be and hereby is denied.

With respect to the 1981 discharge, plaintiff maintains that the continuing violations theory covers acts of discrimination subsequent to the act made the subject of a timely charge where the subsequent act is part of the on-going pattern of discrimination. She refers us to *Held v. Gulf Oil,* 684 F.2d 427 (6th Cir.1982). That case, however, does not expressly hold that the continuing violations theory permits judicial consideration of a related discriminatory event subsequent to the filing of a timely charge. Nevertheless, in finding that plaintiff's claim was timely under the continuing violations theory, the Court did observe that acts of discrimination occurred throughout plaintiff's employment. One may reasonably infer that some of the acts in *Held* were subsequent to the events giving rise to plaintiff's EEO charge.

Nevertheless, we decline to adopt plaintiff's reading of *Held* at this time. Because we find that the 1981 personnel action is subject to equitable tolling, we need not decide whether the continuing violations theory should be expanded to include discriminatory acts subsequent to a timely charge.

## VII.

■ It is settled law that the doctrine of equitable tolling is available in Title VII cases. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). Although *Zipes* involved a private employer, other cases have held that the doctrine is available in employment discrimination cases against the federal government. *Kizas v. Webster,* 707 F.2d 524, 543, 546 n. 103 (D.C.Cir.1983); *Cooper v. Bell,* 628 F.2d 1208, 1212–13 (9th Cir.1980). Equitable tolling is appropriate where plaintiff's failure to follow proper procedures flows from her reliance on statements or actions of those seemingly empowered by law to implement and enforce any discrimination statutes.

In a case involving a private employer, the Second Circuit remanded for a determination by the district court of whether the plaintiff had timely approached the EEOC with her charge of discrimination. *Jen-*

*nings v. American Postal Workers Union,* 672 F.2d 712, 715 (8th Cir.1982). The Ninth Circuit ordered a remand of a case involving a federal employer, in which a white male employed as an EEO coordinator for the Drug Enforcement Agency asserted that his failure to comply with administrative procedures was the result of his reliance on a statement by an employee in DEA's personnel office that a white male could not file an employment discrimination charge. *Cooper,* 628 F.2d at 1209–10, 1214. Although skeptical that an EEO officer would rely on another's interpretation of EEO regulations, the Court held that nevertheless it could not state "as a matter of law [that plaintiff] would not prevail were he able to adduce sufficient evidence to substantiate the allegation." *Id.* at 1214.

With respect to the 1981 discharge, defendant maintains that plaintiff did not even try to file an EEO complaint much less exhaust her administrative remedies and, therefore, that the 1981 claim must be dismissed. Defendant further argues that the doctrine of equitable tolling applies only where the timeliness of an EEO charge is at issue and not where plaintiff has failed to file an administrative complaint at all.

■■■ We disagree with defendant's fundamental assumption. We find that plaintiff did attempt to file an EEO complaint. Plaintiff initiated the administrative process as required by 29 C.F.R. § 1613.213(a) within thirty days of the event giving rise to her claim of discrimination as required by 29 C.F.R. § 1613.214(a)(1)(i). Mr. Johnson's phone log corroborates plaintiff's testimony that she did timely consult with an EEO counselor about the discharge letter. Thus the timeliness of the EEO charge is at issue, and accordingly, the doctrine of equitable tolling applies.

Section 1613.213(a), entitled "Pre-complaint Processing" states that once the complainant has brought her complaint to the attention of the EEO counselor "the agency shall require the ... Counselor to make whatever inquiry he or she believes necessary." That section also provides that the counselor "shall ... conduct the final interview ... not later than twenty-one calendar days" after being contacted by the complainant. This mandatory language makes it incumbent upon the counselor—not the complainant—to follow-up on informal complaints. Plaintiff did all that she could do, or indeed was required to do, to initiate the EEO process.

In addition, we have the testimony of the plaintiff that she was instructed by Mr. Johnson that she would not have to come in for an interview with respect to the discharge letter as that claim of discrimination could be included in the pending 1980 formal complaint. As stated earlier, we give little weight to Mr. Johnson's testimony that he had no recollection of the phone call but that he would not have told plaintiff that her discharge could be included in the pending formal complaint. Also as stated earlier, we find plaintiff's account of events more credible and her reliance on Mr. Johnson reasonable. Furthermore, the uncontradicted evidence was that plaintiff raised the matter of her discharge in the conference call prior to her EEO hearing and that no one challenged her right to discuss the discharge at the hearing. Plaintiff also testified that when she discovered she would not be permitted to present evidence pertinent to her discharge she followed the hearing examiner's advice as to how to proceed.

Based upon our review of all the evidence, we hold that plaintiff not only properly initiated the EEO process with respect to her 1981 discharge, but also took all possible steps to be sure her discharge claim would be considered. Her reliance upon both Mr. Johnson and the EEO examiner was reasonable. In short, plaintiff's alleged failure to exhaust her administrative remedies is excused because the alleged failure resulted solely from plaintiff's reasonable reliance on persons responsible for the proper administration of EEO complaints.

We emphasize that we do not hold that a federal employee may ignore the require-

ment that she bring her claim of discrimination to the attention of an EEO counselor within thirty days as required by 29 C.F.R. § 1613.213(a) and § 1613.214(a)(1)(i). We are heedful of the Supreme Court's admonition that section 717 permitting employment discrimination suits against the federal government contemplates administrative as well as judicial enforcement powers. *Brown v. General Services Administration*, 425 U.S. at 833, 96 S.Ct. at 1968. In the instant case, however, it is absolutely clear that plaintiff did comply with the thirty-day requirement of § 1613.214(a)(1)(i) in that she brought her charge of discrimination to the attention of an EEO counselor. We can find no fact or law to support holding her solely responsible for the fact that her charge did not proceed in the usual fashion. Accordingly, with respect to the 1981 discharge claim, defendant's motion is denied.

### VIII.

To summarize, defendant's motion to substitute William F. Bolger for the United States Postal Service is granted. With respect to defendant's motion for partial summary judgment, we find that plaintiff's claims of discrimination based upon the May, 1979 letter of warning and the November, 1979 suspension are properly before this Court under a theory of continuing violations. Moreover, we find that plaintiff's charge of discrimination based upon her 1981 discharge is also properly before this Court as plaintiff did all that she could to comply with appropriate regulations governing EEO complaints by federal employees.

Defendant's motion for partial summary judgment is therefore denied.

SO ORDERED.