502 F.2d 599
 8 Fair Empl.Prac.Cas. 629, 8 Empl. Prac. Dec. P 9633
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellant,
v.
WESTERN PUBLISHING COMPANY, INC., and Allen Hall, Manager,
Employee Relations, Appellees.
 No. 73-1894.
 United States Court of Appeals, Eighth Circuit.
 Submitted April 18, 1974.
Decided Aug. 27, 1974.
 
 Susan J. Johnson, Atty., Appellate Section, EEOC, Washington, D.C., for appellant.
 George P. Blake, Chicago, Ill., for appellees.
 Before HEANEY and STEPHENSON, Circuit Judges, and SMITH, Senior District Judge.*
 HEANEY, Circuit Judge.
 
 
 1
 The Equal Employment Opportunity Commission appeals from the District Court's denial in part of enforcement of a subpoena issued by the Commission pursuant to 710 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-9 (Supp. II, 1973).
 
 
 2
 On January 9, 1971, Janet A. Brady filed a charge with the EEOC against the Western Publishing Company and Allen Hall, its personnel manager. The charge stated:
 
 
 3
 Mr. Hall has been discriminating against my race. He has become determine to destroy my life in every way possible, because I am a Negro. He has made it so hard that I can not get a job in the city of St. Louis since I quit work on June 29, 1970. He does not feel that I have a son and a ill mother to support. He just feel that as long as I am a Negro I don't need a job. I tried to talk to them but it has done no good, he has discriminated against me and is going to keep on discriminate against Negroes until something done. Please give me some help.
 
 
 4
 Ms. Brady further alleged that the most recent date on which the discrimination took place was January 5, 1971.
 
 
 5
 The EEOC referred the charge to the Missouri Commission on Human Rights by letter dated January 21, 1971. The Missouri Commission failed to act on it. On March 21, 1971, the EEOC assumed jurisdiction over the charge pursuant to the then provisions of 706(b) of Title VII of the Act, 42 U.S.C. 2000e-5(b) (1970).
 
 
 6
 On March 14, 1972, a perfected charge was filed which alleged that Ms. Brady had been 'fired.' On this same date, she filed an affidavit[1] with the Commission in which she averred that: she was the only black working in an office job at Western Publishing at the time she was hired; she was paid less than any other employee; she was not given raises like other employees; she was not given a promotion; she was harassed and eventually fired; and she was given bad references, all because she was black.
 
 
 7
 On March 21, 1972, an officer of the Commission tendered a demand for access to information to the company. The demand was rejected on the ground that it included information not relevant to the charge that Hall had given Ms. Brady bad references.[2]
 
 
 8
 The final perfected charge was filed on January 15, 1973. It read as follows:
 
 
 9
 I feel Western Publishing Company has discriminated against me because of my race (Negro) by paying me less than any other salaried employee and by not giving me raises when others received raises. I feel the company has also discriminated against me and other Blacks because of our race (Negro) by not promoting us, by discriminating against us in hiring, and by discharging us because of our race (Negro). Finally I feel the company discriminated against me because of my race by giving out discriminatory references on me when I tried to find another job.
 
 
 10
 On February 21, 1973, the Commission issued a subpoena duces tecum to the company. It requested Hall to produce records, folders and agreements dealing with nearly every aspect of the company's employment practices and policies.[3]
 
 
 11
 On February 28, 1973, Western Publishing filed with the Commission a Petition to Revoke the Subpoena on the grounds that the material requested did not relate to any matter properly under investigation or for which a valid charge had been filed. The company asserted that Ms. Brady's charge was invalid since it was not timely filed, and that even if valid, it was unreasonable, burdensome and oppressive.
 
 
 12
 On May 3, 1973, the Commission determined that: (1) all the allegations in the final perfected charge were valid and properly filed because the additional allegations contained in the final perfected charge were permissible amendments and the charge alleged class discrimination of a continuing nature; (2) all information requested was both relevant and material to the charge; and (3) the subpoena was not unreasonable, burdensome or oppressive.
 
 
 13
 The company continued to refuse to comply with the subpoena, and on June 25, 1973, the Commission filed a petition in the District Court to enforce the subpoena.
 
 
 14
 The District Court held a hearing on July 13, 1973. On November 6, 1973, the District Court issued its Memorandum and Order. It declined to decide whether the allegations other than 'discriminatory references' contained in the final perfected charge properly reflected the original charge. It reasoned that those allegations would not have been timely filed (within ninety days of their occurrence, 42 U.S.C. 2000e-5(d) (1970)) even if they were to relate back to the date the original charge was filed. It concluded that only the information relevant to the charge of 'discriminatory references' need be produced. It ordered the company to make available to the Commission only those records relating to termination (Item 9 of the subpoena, n. 3, supra) and the materials previously offered to the EEOC by the company. The latter materials include: (1) the company's 'personnel action forms' for all terminated employees; (2) a letter from the company to the Missouri State Employment Service concerning the company's position as to unemployment compensation for Ms. Brady; and (3) an affidavit from Mr. Hall concerning the company's reference policies. The 'personnel action forms' include the employee's name, date of termination, reason for termination, and employment performance. The company states that it is these forms that provide the basis for any references given regarding former employees including Ms. Brady.
 
 
 15
 This appeal was then filed by the Commission. The issues on appeal are whether the allegations in the final perfected charge other than discriminatory references were timely filed, and whether these additional allegations constituted permissible amendments to the original charge.
 
 
 16
 It is well established that lay complainants' charges are to be construed broadly in a liberal manner in order to effect the 'remedial and humanitarian underpinnings of Title VII and of the crucial role played by the private litigant in the statutory scheme.' Sanchez v. Standard Brands, Inc., 431 F.2d 455, 460 (5th Cir. 1970). It is also established that: (1) complainants' allegations are not to be construed 'in a crabbed, artificial manner,' Macklin v. Spector Freight Systems, Inc., 156 U.S.App.D.C. 69, 478 F.2d 979, 988 (1973); (2) 'the matters the Commission proceeds to investigate should assist in determining the scope of the complaint,' Id.; and (3) the Commission has the authority 'to reframe charges and to use available materials and information to articulate lay complainants' charges.' Blue Bell Boots, Inc. v. Equal Employment Opportun. Com'n, 418 F.2d 355, 357 (6th Cir. 1969). Furthermore, the regulations to Title VII provide, in part, that amendments to an original charge may be filed and relate back to the original filing date where the amendments allege 'additional acts which constitute unlawful employment practices directly related to or growing out of the subject matter of the original charge.' 29 C.F.R. 1601.11(b) (1973). In addition, it is clear that in the investigative stage if it has been alleged nonfrivolously that the violation charged is a continuing one, the statute of limitations may not be raised to preclude access to the evidence. Rather the Commission is entitled to see all the evidence relevant to the charge so it can decide 'whether it thinks that the violation is a continuing one, and, if so, whether it has reasonable cause to believe the charge is true.' Pacific Maritime Association v. Quinn, 491 F.2d 1294 (9th Cir. 1974).
 
 
 17
 Read in the light of the aforementioned principles, we think that the District Court erred in holding that the charge was not timely filed with respect to allegations other than discriminatory references. We are also convinced that the original charge can properly be read as asserting that the company had been practicing and continued to practice discrimination with respect to every phase of employment.
 
 
 18
 The record reveals that in the original charge, Ms. Brady stated: 'Mr. Hall has been discriminating against my race. * * *'. This sentence can only be read as indicating a belief on Ms. Brady's part that the discrimination was pervasive and continuing. That Ms. Brady intended that her charge be construed in this manner is supported by her further statement that: '* * * (Hall) has discriminated against me and is going to keep on discriminat(ing) against Negroes until something (is) done. Please give me some help.' To be sure, her only specific allegation was that she had been given bad references because of her race, but this may have been the event which finally gave her the impetus to file the charge. This in no way diminishes the fact that the charge was actually broader in nature.
 
 
 19
 We, therefore, hold that the Commission is entitled to have access to, for the purposes of examination and copying, all evidence which is relevant and material to the final perfected charge's allegations that discrimination against Ms. Brady and other Negroes prevailed in Western Publishing Company in regard to salaries, promotions, hiring, discharges and references. See 42 U.S.C. 2000e-9 (Supp. II, 1973); 42 U.S.C. 2000e-8(a) (1970); 29 U.S.C. 161 (1970). See, e.g., Graniteville Co. (Sibley Div.) v. Equal Employ. Op. Com'n, 438 F.2d 32 (4th Cir. 1971). On remand, the District Court is to decide, consistent with this opinion, which of the subpoenaed evidence is relevant and material to the charges under investigation.
 
 
 20
 Finally, we state that we are appalled by the lack of cooperation of counsel with one another, with the District Court and with this Court. The rigid, hard-line postures assumed by the parties from the outset have served to frustrate the statutory goal of achieving equal employment opportunities for all through voluntary compliance whenever possible. Had the investigation been pursued in a cooperative spirit by all concerned and had the narrow initial request (n. 2, supra) of the EEOC been honored, this matter may well have been resolved two years ago.
 
 
 21
 Reversed and remanded to the District Court for further proceedings consistent with this opinion.
 
 
 
 *
 TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation
 
 
 [1]
 The Affidavit is as follows:
 I started working at Western Publishing Company May 10, 1968 as a clark typist. I started at $1.75 per hour, in about 4 months I got a raise to $1.95 an hour, after that I never got another raise while others did. When I started I was the first Negro to work in the office job and up until I left there. I was the only one. I got paid the least of all others in the company. After I had been there for about a half a year they hired a white office girl to help me out. When she came on the job I did most of the training for her. After I had been there for a little over a year the company got a personnel manager. Allen Hall. He fired 2 or 3 blacks soon after he was there. A short time after he came on the job I was sick in the hospital for about 5 days because of infected tonsils.
 While he was there the white girl that I had trained took over more and more of my duties until she was giving me orders while I just typed her shipping labels for her. While she was there she got 2 or 3 raises, but never did any more work than I had done.
 Later I was sick for a couple of days. They require us to call in & tell our supervisors why we have to be out. When my mother ???? called in to tell them I was sick, she was switched to Mr. Hall rather than my supervisor. She called both days. When I went back to work I was told at the door that I had been terminated. This was June 29, 1970.
 When I tried to find work other places & gave the Western Publishing Company as a reference they would tell my prospective employer that I was the worst worker and that I couldn't type 15 words per minute. It was so bad that I could get a job anywhere in St. Louis. Once when I was applying, at a place I overheard what Mr. Hall was saying about me, Janet A. Brady, I asked my mother to call and ask about me as a reference and he made me sound like the worst of workers. I called him once and asked him why he was saying those things and he said that he couldn't tell me over the phone. It was 10 months since I got fired that I was finally able to get a job. After I was fired. I took a typing test and got 85 words per minute with four errors and still had a hard time getting a job.
 
 
 [2]
 The following information was requested: (1) Employer Information Report EEO-1-- 1969, 1970, 1971; (2) Employee Policy and Procedure Manual regarding sick leave, discharge and reference policy; (3) personnel folder on Janet A. Brady; (4) personnel folders on other employees discharged since June 1969; (5) personnel folders of other office personnel in similar positions as Janet Brady; (6) pay roll records from June 1969 to January 1971, indicating race, national origin, and position of each; (7) copies of job performance ratings on office personnel from June 1969 through January 1971; (8) copies of termination notices on all personnel discharged from June 1969 to January 1971, annotated as to race, national origin, and reason for discharge; (9) copies of references given to other companies on Janet A. Brady and other employees who have been terminated voluntarily or involuntarily from June 1969 to January 1971 indicating race, national origin of each
 
 
 [3]
 The subpoena requested the following information and documents:
 
 
 [1]
 Records setting forth the names, addresses and telephone numbers of all persons or entities used by Respondent for purposes of recruiting applicants for employment. 2. Records setting forth all policies, procedures or practices used by Respondent for recruiting applicants for employment. 3. Applications of all applicants who have applied for employment since January 1, 1970. Such records should set forth the name and race of the applicant, whether or not the applicant was hired and if not hired the reason for not being hired. 4. Personnel folders on all employees employed by Respondent since January 1, 1970. 5. Records setting forth the name and race of all employees employed by Respondent since January 1, 1970. Such records should include the date of hire of the employee, the rate of pay and the job held by the employee. 6. Records setting forth the name and race of all employees who bid on or were considered for promotion since January 1, 1970. Such records should show whether or not the employee was promoted. If promoted, the records should show the job and rate of pay promoted from and the job and rate of pay promoted to. If not promoted, the records should show the reason the employee was not promoted. 7. Attendance and/or absenteeism records maintained by Respondent on all employees employed since January 1, 1970. 8. Collective Bargaining Agreements to which Respondent is a signatory. 9. Records setting forth the names and race of all employees terminated since January 1, 1970. Such records should show the reason for the employees termination. 10. Records setting forth the names and race of all employees employed by Respondent since January 1, 1970, who have received raises in rates of pay. Such records should set forth the number of raises received and the amount of each raise received. 11. Records setting forth all Respondent's policies and procedures in regard to recruiting, hiring, raises in pay, rates of pay, promotions, references and discharge