**Vivian L. ROBERTS, Plaintiff-Appellant,**

v.

**NORTH AMERICAN ROCKWELL CORPORATION, Defendant-Appellee.**

**No. 79–3424.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 3, 1980.

Decided June 1, 1981.

Rehearing and Rehearing En Banc Denied Sept. 10, 1981.

Tim Philpot, John C. Anggelis, Anggelis & Philpot, Lexington, Ky., for plaintiff-appellant.

Steven Kahn, Walter B. Connolly, Jr., Pepper, Hamilton & Scheetz, Washington, D. C., Bennett Clark, Stoll, Keenon & Park, Lexington, Ky., for defendant-appellee.

Before LIVELY, ENGEL and KEITH, Circuit Judges.

KEITH, Circuit Judge.

This case presents the question whether plaintiff Vivian L. Roberts' complaint of employment discrimination was filed on time. The district court concluded that Mrs. Roberts had not filed her complaint with the Equal Employment Opportunity Commission on time. Accordingly, the court granted defendant Rockwell's motion for summary judgment. We reverse.

## FACTS

In December of 1972, Vivian L. Roberts went to the Winchester, Kentucky Unemployment Office. She wished to apply for a job at the North American Rockwell axle plant located in Winchester.[1] Unemployment Office personnel told her that the plant did not hire women. They refused to give her an employment application. Shortly after that, Mrs. Roberts returned to the Unemployment Office with her son-in-law. She entered the office first, while the son-in-law waited in the car. Again, she was refused an application and was told that the company did not hire women. Mrs. Roberts left, and had her son-in-law go into the office. He was promptly given an application.

Mrs. Roberts filled out the application and mailed it directly to Rockwell. She heard nothing. From December 1972 until August of 1973, she periodically returned to the Winchester Unemployment Office to inquire as to the status of her application.

---

1. Mrs. Roberts alleges that the Unemployment Office acted as Rockwell's agent in processing employment applications. Since the district court granted summary judgment, we must assume the truth of her allegations for purposes of this appeal. See, e. g. *Smith v. Hudson*, 600 F.2d 60 (6th Cir.) *cert. denied*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979).

Our recitation of the facts is based on the limited record below, and necessarily assumes the truth of plaintiff's allegations.

She was repeatedly told that she would not be hired because she was a woman. On or about September 11, 1973, Mrs. Roberts, her sister, Ophelia Roberts, and a friend, Nancy Wylie, went to the Unemployment Office. The three women stated that they wished to apply for jobs with North American Rockwell. They were all refused applications. The women called the Kentucky Commission on Human Rights which, in turn, called the Unemployment Office. As a result of the Commission's actions, the women got their applications. Ophelia Roberts and Nancy Wylie filled out applications for a position with Rockwell and handed them in. Mrs. Roberts did not fill out an application, since she had filled one out previously, and was aware that it was still on file.

On September 17, 1973, Mrs. Roberts wrote a letter to the Equal Employment Opportunity Commission complaining about Rockwell's policies. She filed a formal charge of discrimination with the EEOC on October 5, 1973. The EEOC deferred action on the complaint, and referred the complaint to the Kentucky Commission on Human Rights.[2] On September 23, 1974, the Kentucky Commission on Human Rights and North American Rockwell entered into a conciliation agreement. Under the agreement, Ophelia Roberts was offered a position at the plant. In addition, Rockwell agreed to provide the KCHR with semi-annual reports on hiring, firing and promotions. The KCHR congratulated Mrs. Vivian Roberts, the plaintiff, for her "courageous action" which "resulted in the elimination of the discriminatory practice." The EEOC adopted the conciliation agreement between the Kentucky Commission on Human Rights and Rockwell.

So far as the record shows, Mrs. Vivian Roberts obtained no specific relief in the conciliation agreement. Nor does it appear that she had waived any of her rights. Accordingly, she received her right-to-sue letter from the EEOC and brought this suit against Rockwell on January 6, 1978. The district court granted defendant Rockwell's motion for summary judgment on statute of limitations grounds, and this appeal was brought.

I

Under Title VII, a plaintiff must file with the EEOC a charge of discrimination against an employer within 180 days after the discrimination occurred.[3] Timely filing of a charge with the EEOC and subsequent timely filing of a complaint in federal district court is a pre-requisite to the maintenance of a Title VII action. *See e. g. United Airlines v. Evans*, 431 U.S. 553, 555 n.4, 97 S.Ct. 1885, 1887 n.4, 52 L.Ed.2d 571 (1977); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974).

The district court concluded that Mrs. Roberts had not filed her complaint or charge with the EEOC on time—that is, within 180 days after an act of discrimination occurred. The court measured the 180-day time period from December of 1972, when Mrs. Roberts sent in her application to the defendant. This issue is the sole question raised in this appeal.

---

**2.** The EEOC is authorized to defer jurisdiction over a civil rights complaint where a state or local agency is authorized to grant or seek relief from discriminatory employment practices. See § 706(c) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(c) and (d). Kentucky is a deferral state. 29 C.F.R. § 1601.74.

**3.** In relevant part, section 706(e) of Title VII, 42 U.S.C. § 2000e–5(e) provides:

A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ... except that in the case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency ..., such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier

.   .   .   .   .

The plaintiff does not contend that she is entitled to the 300-day limitations period which § 706(e) alternatively allows.

We cannot agree with the district court's analysis. If the district court were correct that the 180-day period had to be measured from December of 1972, then we would affirm. Mrs. Roberts' charge with the EEOC was not filed until October of 1973—far more than 180 days from the date she sent in her application to the company.

The problem is that both the complaint filed in this case and the limited record before us support the plaintiff's contention that she was subjected to an ongoing pattern of discrimination.

Mrs. Roberts mailed in her application to the company in December of 1972. But things did not end there. She repeatedly visited the Unemployment Office, only to be repeatedly told that Rockwell did not hire women. And there appears to be no question that she, her sister, Ophelia Roberts, and Nancy Wylie were all refused applications on September 11, 1973, when they visited the Unemployment Office as a group. As noted above, only a telephone call from the Kentucky Human Rights Commission led the Unemployment Office to give application forms to the women.

If a company discriminates by firing an employee because of his/her race or sex, the discriminatory act takes place when the employee is fired. The statute of limitations ordinarily starts running from this date. *See Delaware State College v. Ricks,* —— U.S. ——, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *United Airlines v. Evans, supra; Hart v. J. T. Baker Chemical Corp.,* 598 F.2d 829 (3d Cir. 1979); *Krzyzewski v. Metropolitan Gov't,* 584 F.2d 802 (6th Cir. 1978); *Prophet v. Armco Steel,* 575 F.2d 579 (5th Cir. 1978); *Olson v. Rembrandt Printing Co.,* 511 F.2d 1228, 1234 (8th Cir. 1975). *See also Int'l Union of Electrical Workers v. Robbins & Meyers, Inc.,* 429 U.S. 229, 234–35, 97 S.Ct. 441, 446, 50 L.Ed.2d 427 (1976).

The issue becomes more difficult when a company fails to hire or promote someone because of their race or sex. In many such situations, the refusal to hire or promote results from an ongoing discriminatory policy which seeks to keep blacks or women in low-level positions or out of the company altogether. In such cases, courts do not hesitate to apply what has been termed the continuing violation doctrine. *See* 2 Larson, Employment Discrimination 9A § 48.54 (1980); Shlei & Grossman, Employment Discrimination Law 227–34 (Supp.1979).

This doctrine has been applied in a series of early decisions. *See Rich v. Martin Marietta,* 522 F.2d 333 (10th Cir. 1975) ("Plaintiffs here challenge the entire promotion system, maintaining that it continually operated so as to hold them in lower echelons.") *Macklin v. Spector Freight Systems, Inc.,* 478 F.2d 979, 987 (D.C. Cir. 1973); (layoff of black workers and prolonged union grievance proceedings "amounted merely to single episodes in an alleged conspiracy to deny applicants over-the-road driver jobs because of their race continuing at least up to and including the date the EEOC complaint was filed."); *Belt v. Johnson Motor Lines, Inc.,* 458 F.2d 443 (5th Cir. 1972) ("no reason to lock the courthouse door to his claim solely because he has alleged a contemporary course of conduct as an act of discrimination."); *Bartmess v. Drewrys USA Inc.,* 444 F.2d 1186 (7th Cir.), *cert. denied,* 404 U.S. 939, 92 S.Ct. 274, 30 L.Ed.2d 252 (1971) (maintenance of an allegedly discriminatory retirement plan is a continuous discriminatory practice). *See also EEOC v. West'n Pub. Co., Inc.,* 502 F.2d 599 (8th Cir. 1974).

Rockwell challenges these early decisions and urges us not to follow them. Rockwell claims that a hiring case is exactly like a discharge case. That is, the date of failure to hire is necessarily the date from which the alleged discrimination is measured. Thus Rockwell claims that Mrs. Roberts had to file a timely charge with the EEOC when she was first told that Rockwell did not hire women. According to Rockwell, it was irrelevant that Mrs. Roberts returned to the Unemployment Office on numerous occasions, only to be told that no women need apply. According to Rockwell, it was irrelevant that Mrs. Roberts and her two female companions were initially denied employment applications when they returned to the Unemployment Office in September of 1973.

We cannot agree. Neither logic nor precedent supports Rockwell's position. First, by definition, if there is a continuing violation, the company is continually violating Title VII so long as its discriminatory policy remains in effect. An applicant for employment or promotion will, in many circumstances, be interested in any suitable position which opens up. As job openings become available, the applicant will automatically be rejected because of his/her race, sex or national origin. We see no reason to formalistically require an applicant to continuously apply, only to be continuously rejected. We do not think that Title VII requires that suit be filed when the applicant is initially discriminated against. If an ongoing discriminatory policy is in effect, the violation of Title VII is ongoing as well.

■ This case illustrates the continuing violation doctrine well. In this case, Mrs. Roberts made a number of oral inquiries about her application, which was on file. This is empirical proof that she was, in effect, continually applying for a position at Rockwell—and being continually rejected because of her sex.

Second, there exist important policy reasons. Title VII advances important federal goals. To require that suit be filed at the first instance of discrimination or not at all would frustrate Title VII. Broad, remedial acts such as Title VII should be liberally construed to encourage the eradication of discrimination.

The facts in *Belt v. Johnson Motor Lines, Inc., supra,* are very similar to those here. In *Belt,* black employees made written applications for transfer to better-paying positions. These transfer requests were denied. Thereafter, the black employees made follow-up oral requests. The district court held that the continuing oral requests would not make a Title VII claim timely where the time period for filing a claim based on the written requests had run out. The Fifth Circuit disagreed:

> We cannot agree with the district court that a discriminatory labor practice may not be a continuing act. To so

hold on the facts of this case would permit discriminatory acts to go unrebuked, a construction far too restrictive and alien to the liberal construction we have previously given the Civil Rights Act of 1964. 458 F.2d at 445.

We endorse this language, which we think is directly applicable to the case at bar.

Rockwell relies heavily on *United Airlines v. Evans, supra.* This reliance is misplaced. In *Evans* an airline stewardess was discharged when she married in 1968. In *Sprogis v. United Airlines,* 444 F.2d 1194 (7th Cir.), *cert. denied,* 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971), the court held that an airline's no-marriage-for-stewardesses rule violated Title VII. After *Sprogis,* plaintiff Evans was rehired by United Airlines. However, she was rehired as a new employee, and received no seniority credit for her former service. She sued, claiming that the effect of the policy was to perpetuate past discrimination, in violation of Title VII. The Supreme Court conceded that United's seniority system had a continuing impact on Evans' pay and benefits. However, the Court held that there was no present *violation.* The seniority system was neutral, and did not itself discriminate on the basis of sex or race. *Evans, supra* 431 U.S. at 558, 99 S.Ct. at 1889. Thus, the airline's unwillingness to credit Evans with back seniority was not an independent violation of Title VII.

We regard *Evans* as a narrow case, which should be limited to instances of past discrimination perpetuated by bona-fide seniority systems. *Evans* cannot apply in a case such as this, involving discrimination in hiring, since each time the company hires, it violates Title VII so long as its discriminatory policy is in effect.

Rockwell's alleged policy of not considering women for employment in its Winchester axle plant is a patent violation of Title VII. The seniority system used in *Evans* may have perpetuated past discrimination, but the seniority system did not itself violate Title VII. In this case, Rockwell's al-

leged policy was a clear, continuing violation of Title VII. We do not believe that *Evans* affects the continuing violation doctrine, as applied in this case.

Our view finds support in numerous post-*Evans* decisions. *See Higgins v. State of Okla.*, 642 F.2d 1199, 1200 n.2 (10th Cir. 1981); *Jenkins v. Home Ins. Co.*, 635 F.2d 310 (4th Cir. 1980); *Satz v. ITT Financial Corp.*, 619 F.2d 738, 744–45 (8th Cir. 1980); *Reed v. Lockheed Aircraft Corp.*, 613 F.2d 757 (9th Cir. 1980) (if continuing discriminatory policy was in effect, "each day without promotion constituted a new violation of Title VII, assuming that similarly situated males were promoted with more regularity"); *Shehadeh v. C&P Telephone Co.*, 595 F.2d 711 (D.C. Cir. 1978) ("When, however, a continuing discriminatory employment practice is alleged, the administrative complaint may be timely filed notwithstanding that the conduct impugned is comprised in part of acts lying outside the charge-filing period."); *Patterson v. Am. Tobacco Co.*, 586 F.2d 300, 304 (4th Cir. 1978). "([*Evans*] did not deal with a continuing violation such as a discriminatory promotional system where the discrimination continues from day to day and a specific violation occurs whenever a promotion is made"); *Acha v. Beame*, 570 F.2d 57, 65 (2d Cir. 1978) ("A continuously maintained illegal employment policy may be the subject of a valid complaint until a specified number of days after the last occurrence of an instance of that policy"); *Clark v. Olinkraft*, 556 F.2d 1219 (5th Cir. 1977). *See also Moore v. City of San Jose*, 615 F.2d 1265 (9th Cir. 1980); *Laffey v. N. W. Airlines*, 567 F.2d 429, 473 (D.C. Cir. 1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978); *Stewart v. General Motors*, 542 F.2d 445, 454 (7th Cir. 1976), *cert. denied*, 433 U.S. 919, 97 S.Ct. 2995, 53 L.Ed.2d 1105 (1977); *Masco v. United Airlines*, 574 F.2d 1127 (3d Cir. 1978); *Verzosa v. Merrill Lynch*, 589 F.2d 974 (9th Cir. 1978).

## II

Alternatively, we hold that Mrs. Roberts' complaint with the EEOC was timely because a discriminatory act occurred on September 11, 1973, well within the 180-day time period. As noted above, Mrs. Roberts filed a formal application with the company in December of 1972. However, she never received a formal rejection notice from Rockwell. Instead, she was continually told that the company did not hire women. The most recent time she was told this was on September 11, 1972, when she, her sister and a friend visited the Unemployment Office. This separate, distinct failure to consider Mrs. Roberts for employment because of her sex was a separate act of discrimination. *See Jurinko v. Wiegand Co.*, 477 F.2d 1038, 1042 (3d Cir. 1973), *vacated on other grounds*, 414 U.S. 970, 94 S.Ct. 293, 38 L.Ed.2d 214 (1973); *Molybendum Corp. of America v. EEOC*, 457 F.2d 935 (10th Cir. 1972).

We do not consider it significant that Mrs. Roberts did not submit a second application form in September of 1973, as her sister, Ophelia Roberts, and her friend, Nancy Wylie, did. Mrs. Roberts had an application form already on file. And, as the Court stated in *Teamsters v. United States*, 431 U.S. 324, 365–66, 97 S.Ct. 1843, 1869–70, 52 L.Ed.2d 396 (1977), "When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application." *See also Milton v. Weinberger*, 645 F.2d 1070 (D.C. Cir. 1981).

## III

None of Rockwell's arguments can withstand analysis. Accordingly, we reverse and remand for further proceedings. Because of the length of time this case has been pending, we direct the district court to grant this case the very highest priority on remand.

REVERSED AND REMANDED.

ENGEL, Circuit Judge, concurring.

I concur for the reasons stated in Part II of the majority opinion. Since the last dis-

criminatory act occurred within 180 days before Mrs. Roberts filed her complaint with the EEOC, I do not think it necessary to decide whether the continuing violation doctrine applies here and whether the Supreme Court intended a narrow interpretation of *United Air Lines v. Evans*, 431 U.S. 553 (1977). I would leave this problem to another day when the facts of the case require it.