Dennis Hazen HUGULEY, Larry Kitchen, James Kennedy, and Larry Dodson, for themselves and for all others similarly involved, Plaintiffs,

v.

GENERAL MOTORS CORPORATION, a foreign corporation, Defendant.

Civ. A. No. 83–2864.

United States District Court, E.D. Michigan, S.D.

July 21, 1986.

Ronald Robinson, Dennis James, Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick, Ronald Reosti, Detroit, Mich., for plaintiffs.

Wendell R. Tucker, Legal Dept., General Motors Corp., Detroit, Mich., Barbara A. Brown, Paul, Hastings, Janofsky & Walker, Washington, D.C., for defendant.

## OPINION

FEIKENS, District Judge.

Plaintiffs sue on behalf of themselves and a purported class of black, salaried employees of General Motors in Michigan, Ohio and Indiana. They claim that defendant's performance appraisal system discriminates against them on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17, and of 42 U.S.C. § 1981. Plaintiffs move for class certification. Defendant moves for summary judgment on the Title VII claims of plaintiffs Dennis Hazen Huguley ("Huguley"), Larry Kitchen ("Kitchen"), and Larry Dodson ("Dodson"). I have jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343.

## I. CLASS CERTIFICATION

Class certification is proper if

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).[1] In practice, the prerequisites overlap:

The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.

General Telephone Company of the Southwest v. Falcon, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982). Since defendant does not challenge the numerosity of the class, the competence of counsel, or the unity of the class members' interests, the issue is whether the individual claims and the class claim are sufficiently "interrelated" to warrant class treatment.

The heart of both the class claim and the individual claims is the allegation that defendant's performance appraisal system discriminates against class members on the basis of race.[2] Defendant admits that its

1. Plaintiffs seek certification pursuant to Rule 23(b)(2). (Third Amended Complaint, ¶ 33). Accordingly, I need not address the requirements of Rule 23(b)(3), (c)(2).

2. On behalf of the class, plaintiffs allege:
Defendant has utilized and continues to utilize a performance appraisal system which has a racially discriminatory disparate impact upon Plaintiffs in their class and which results in racially discriminatory disparate treatment of Plaintiffs in their class with respect to the employment practices of promotion, demotion, lay-off, recall, pay and transfer.
30. Defendant's performance appraisal system is ... uniform with respect to its forms and procedures throughout Defendant's plants in Michigan, Ohio and Indiana.

31. Defendant's performance appraisal system is heavily dependant [sic] upon the subjective assessment of white supervisory personnel and has insufficient objective criteria and supervisory review to eliminate potential racial bias.
32. Performance appraisals conducted according to Defendant's performance appraisal system since November of 1980, have a direct and substantial relationship with the systems Defendant uses to effect promotions, demotions, lay-offs, recalls, transfers and pay increases.
Third Amended Complaint, ¶¶ 29–32. On behalf of themselves, plaintiffs allege:
13. [Kitchen's] lay-off in December of 1981 occured [sic] in part because of his perform-

appraisal system is uniform throughout the class and that an employee's appraisal has a direct bearing on pay and demotion decisions, and an impact on promotion, layoff, recall and transfer decisions.[3] Plaintiffs do not seek certification merely on the basis of a shared class characteristic—such as race or national heritage—as did the plaintiff in *General Telephone*, 457 U.S. at 150–51, 157–59, 102 S.Ct. at 2366–67, 2370–71 (certification improper where one Mexican-American seeks to challenge his employer's hiring, compensation and promotion policies on behalf of a class of all Mexican-Americans who work, or who might work, for the employer). Rather, they present the common question whether defendant's appraisal system is racially discriminatory in its administration and in its effect on a variety of employment decisions.

Even though the issues are clear from the pleadings, defendant insists that I may not certify a class until after an evidentiary hearing. The United States Supreme Court disagrees: "Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim...." *General Telephone*, 457 U.S. at 160, 102 S.Ct. at 2372. Moreover, the evidentiary hearing defendant proposes threatens to transmute a simple and efficient procedural mechanism into a prescription for preliminary trial of the merits.[4]

■ Defendant also argues that class certification will create an unmanageable series of discrete cases, each requiring separate trial. This ignores both the heart of plaintiffs' case and the operation of Rule 23. The question upon which the validity of both the class claim and the individual claims hinge is whether defendant's performance appraisal system is racially dis-

---

ance appraisal in October of 1981, which was a "good/competent", the third out of five performance appraisal ratings.

14. Plaintiff Kitchen's performance appraisal in October of 1981 was subjective in nature, and was conducted by a white Supervisors [sic] in a discriminatory manner.

15. Plaintiff's recall to work was delayed, in part, by his previous performance appraisal.

18. On November 3, 1984, Plaintiff Kennedy received a "highly effective" performance appraisal rating, third out of six rating categories.

19. The aforementioned performance appraisal rating was subjective, and discriminatorily applied by white Supervisors and did not fairly reflect Plaintiff Kennedy's performance.

20. Because of this performance appraisal rating, Plaintiff has received a lower merit increase than equally or less qualified white Supervisors.

23. Plaintiff Huguley, during the years 1981 and 1982, received, respectively, "good/competent" and "needs slight improvement" which were respectively third and fourth out of five categories of performance appraisals.

24. Because of these poor performance appraisals, Plaintiff Huguley was demoted from Designer to Senior Technical Stylist.

25. The aforementioned performance appraisals were conducted by white supervision in a subjective and discriminatory manner. . . .

27. After one and a half years (1½) years [sic], Plaintiff Dodson was promoted to the fifth level, associate instructor status.

28. That since that time, Plaintiff has not, despite his request, been promoted to the Sixth level status, in part, as a result of subjective discriminatory performance appraisals performed by white Supervisors.
Third Amended Complaint, ¶¶ 13–28.

3. Defendant answers:

[Defendant's] method of assessing the performance of its non-bonus-eligible salaried employees is uniform throughout its plants in Michigan, Ohio and Indiana....

Defendant admits that an employee's performance, as reflected on his or her performance appraisal, has a direct relationship to decisions regarding merit increases and demotions. Defendant alleges that an employee's performance as reflected on his or her performance appraisal is a factor, along with several other equally or more important factors, in decisions regarding layoffs, transfers, recalls and promotions.
Answer of General Motors Corporation to Plaintiffs' Third Amended Complaint, ¶¶ 30–32.

4. *See* General Motors Corporation's Offer of Proof in Opposition to Class Certification, May 2, 1986.

criminatory. A combination of anecdotal and statistical proof can illuminate this issue without the necessity of separately examining each class member. *See, e.g., Greenspan v. Automobile Club of Michigan,* 495 F.Supp. 1021 (E.D.Mich.1980) (Feikens, J.).

## II.  SUMMARY JUDGMENT

### A.  Exhaustion of Administrative Remedies

■ Neither Huguley nor Dodson filed a charge with the Equal Employment Opportunity Commission ("EEOC"). Kitchen filed a charge, but defendant contends that it does not encompass the claim he makes here. A proper EEOC charge is ordinarily a prerequisite to federal suit. *See, e.g., Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). But, if at least one class representative exhausts administrative remedies, other class members may join as named plaintiffs regardless of whether they personally exhaust administrative remedies:

> Defendants have moved to dismiss certain named plaintiffs on the ground that, as to the Title VII claims, only those plaintiffs who have exhausted their remedies personally before the EEOC can be proper named plaintiffs and class representatives....
>
> The court finds no merit in this argument. There are several plaintiffs who have exhausted their EEOC remedies and who have received right to sue letters. That being the case, there is no reason why the other plaintiffs should not remain as named plaintiffs.
>
> Further, the court is of the opinion that allowing these plaintiffs to remain as named plaintiffs can have no possible adverse effect on this litigation or on any party to this litigation and, in fact, will have the beneficial effect of insuring the strength of the class representation.

*Bell v. Automobile Club of Michigan,* 80 F.R.D. 228, 234–35 (E.D.Mich.1978) (Joiner, J.), *appeal dismissed,* 601 F.2d 587 (6th Cir.), *cert. denied,* 442 U.S. 918, 99 S.Ct. 2839, 61 L.Ed.2d 285 (1979). *See also Gibson v. Local 40,* 543 F.2d 1259, 1266 n. 13 (9th Cir.1976); *Oatis v. Crown Zellerbach Corporation,* 398 F.2d 496, 499 (5th Cir. 1968). *Cf. Snell v. Suffolk County,* 782 F.2d 1094, 1100–02 (2d Cir.1986) (even absent class certification, if one plaintiff has exhausted administrative remedies, other plaintiffs with similar claims may join regardless of whether they personally exhaust administrative remedies); *Butcher v. The Evening News Association,* No. 79–70987 (E.D.Mich. May 27 & June 11, 1981) (Cohn, J.) (mem. op. and order permitting intervention where original plaintiffs exhausted administrative remedies but where intervenor did not file EEOC charge).

■ Plaintiff James Kennedy ("Kennedy") has exhausted administrative remedies. Because Huguley, Kitchen and Dodson make claims similar to Kennedy's claim,[5] they may litigate their individual cases and serve as class representatives despite their failure personally to file proper EEOC charges.

### B.  Statute of Limitations

■ Defendant argues that Kitchen's claim, filed with the EEOC on August 9, 1983, is barred by the applicable 300–day statute of limitations, 42 U.S.C. § 2000e–5(e), because it challenges an October, 1981 performance appraisal. Defendant's argument ignores the breadth of Kitchen's claim, which challenges not only the appraisal but also its use against him from December, 1981 through July, 1983 to justify layoff and delayed recall. *United Airlines v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), which limits continuing violation claims, does not apply because Kitchen is not attacking discrimination perpetuated by a bona fide seniority system. *See Roberts v. North American Rockwell Corporation,* 650 F.2d 823, 827 (6th Cir. 1981). Moreover, defendant is still using the allegedly discriminatory performance

---

**5.** Third Amended Complaint, ¶¶ 13–28.

appraisal system. *See Roberts*, 650 F.2d at 827 (*Evans* inapplicable where allegedly discriminatory policy remains in effect). *Cf. Evans*, 431 U.S. at 558, 97 S.Ct. at 1889 (suggesting that continuing violation theory remains viable if the perpetuating mechanism is not neutral). Kitchen's claim is timely.

## III. DISPOSITION

Plaintiffs' motion for certification of a class of black, salaried employees of General Motors in Michigan, Ohio and Indiana is GRANTED. Defendant's motion for summary judgment is DENIED.

An appropriate order may be submitted.