Linda BROWN

v.

## PACKAGING CORPORATION OF AMERICA, INC.

No. 3:93–0627.

United States District Court,
M.D. Tennessee,
Nashville Division.

Dec. 20, 1993.

John A. Ascione, Nashville, TN, for plaintiff.

R. Eddie Wayland, M. Kim Vance, Nashville, TN, for defendant.

### MEMORANDUM

JOHN T. NIXON, Chief Judge.

Pending before the Court is Defendant's Motion to Dismiss (Doc. No. 3), to which Plaintiff has filed a Response in opposition (Doc. No. 6). Defendant has filed a Reply to Plaintiff's Response to Defendant's Motion to Dismiss and Further Motion to Dismiss on Basis of Statute of Limitations (Doc. No. 11). In accordance with the reasoning set forth below, the Court hereby denies Defendant's Motion.

## I. BACKGROUND

Plaintiff Linda Brown, a former secretary to the plant manager at Defendant Packaging Corporation of America, Inc. ["PCA"], filed this action pursuant to 42 U.S.C. § 2000e *et seq.*, Title VII of the Civil Rights Act of 1964, for unlawful employment discrimination and constructive discharge. (Compl., Doc. No. 1.)

Ms. Brown alleges unlawful sex discrimination by PCA on the grounds that due to her gender PCA did not consider her for, nor promote her to, the position of plant supervisor even though she applied and was qualified for the position. (Doc. No. 1, at 6.) As a result of PCA's unlawful discrimination, Ms. Brown alleges that a less-qualified male was chosen to be plant supervisor. (*Id.*)

Ms. Brown further alleges unlawful constructive discharge by PCA on the basis that Ms. Brown's working conditions became so intolerable that she felt compelled to resign. (Doc. No. 1., at 7.) Specifically, Ms. Brown claims that she was unable to advance further in the company due to her sex; had been denied a salary upgrade which she had been advised she was entitled to and would receive; and was not timely paid for vacation days which she did not take or holiday time during which she worked. (*Id.*)

Ms. Brown seeks compensatory and punitive damages, costs, and attorney's fees. (Doc. No. 1., at 8–9.)

The facts giving rise to this lawsuit are as follows: Ms. Brown began working at PCA as secretary to plant manager Martin Rusnaczyk in October, 1988. (Doc. No. 1, at 2.) As secretary to Mr. Rusnaczyk, Ms. Brown alleges that she performed numerous tasks beyond the normal parameters of her position, including dispatching drivers, preparing invoices and billings, receiving and logging all receivables, ordering trucks, preparing and logging time cards, paying customers, relieving the individual responsible for weighing incoming paper, answering two phone lines, and any other office work as required. (Doc. No. 1, at 2; Pl.'s Resp. Def.'s Mot. Dismiss, Doc. No. 6, at 1–2.) Moreover, she states that in her position as Mr. Rusnaczyk's secretary she was over-

worked and taken advantage of. (Doc. No. 1, at 3; Doc. No. 6, at 2.)

In the Fall of 1991, Ms. Brown learned that a new position as plant supervisor had become available. (Doc. No. 1, at 3.) Ms. Brown then approached her supervisor, Mr. Rusnaczyk, to express interest in and inquire about applying for the position. (*Id.*) Ms. Brown states that Mr. Rusnaczyk laughed at her and responded, "[Y]ou are a woman, and a woman cannot handle the supervisor's position." (*Id.*) Moreover, Mr. Rusnaczyk informed her that an applicant for the supervisor position was required to possess a college degree. (*Id.* at 4.) Ms. Brown alleges, however, that since she assumed that Mr. Rusnaczyk was obligated to submit her name as application for the position to corporate headquarters, Ms. Brown made no further application. (*Id.*)

In January, 1992, PCA hired Craig Jemson, a male, as plant supervisor. (Doc. No. 1, at 4; Equal Employment Opportunity Commission Doc., "Inquiry To Be Filed In 60–Day File," Attach., Doc. No. 5.) Mr. Jemson had previously worked for PCA as an accountant. (Doc. No. 1, at 4.) Although Mr. Jemson had been with PCA for six months longer than Ms. Brown, Ms. Brown alleges that Mr. Jemson had no prior experience in the management, supervision, day-to-day operation, quality, or control of such a plant, and thus that Ms. Brown had to teach him how to do his job. (*Id.*)

On April 21, 1993, Ms. Brown had a meeting with Thomas Cihlar, a corporate general manager of PCA. (Doc. No. 1, at 5.) Ms. Brown claims that during the meeting she discovered for the first time that she had been discriminated against by Mr. Rusnaczyk. (*Id.*) Specifically, Ms. Brown alleges that Mr. Cihlar informed her that she had not been considered for the plant supervisor position because Mr. Cihlar had not been informed that she was interested. (*Id.*) Ms. Brown states that she also discovered at the meeting with Mr. Cihlar that Mr. Rusnaczyk had misled her about the educational requirements for the plant supervisor position. (*Id.*) Moreover, Ms. Brown states that Mr. Cihlar advised her that she would have been considered for the job if Mr. Rusnaczyk had informed Mr. Cihlar that she was interested in it. (*Id.*) Ms. Brown claims that she was unaware of any discrimination against her prior to the meeting with Mr. Cihlar on April 21, 1993. (*Id.*)

On April 23, 1993, Ms. Brown quit her job at PCA. (Ex. A, Def.'s Reply Pl.'s Resp. Mot. Dismiss, Doc. No. 11.) On April 28, 1993, Ms. Brown reported to the Nashville Area Office of the Equal Employment Opportunity Commission ["EEOC"] that she had been sexually discriminated against by PCA. (Doc. No. 1, at 5; EEOC Doc., "Inquiry," Attach., Doc. No. 5.) At that time, Ms. Brown completed an intake questionnaire and was interviewed by EEOC investigator Annie Hodge. (*Id.;* Aff. Pahmeyer, Doc. No. 5, at 1.) Ms. Hodge recorded notes from that interview on an EEOC document "Inquiry To Be Filed In 60–Day File." (Attach., Doc. No. 5.) During the interview, Ms. Hodge advised Ms. Brown that Ms. Brown's complaint was untimely. (*Id.*) As well, Ms. Hodge indicated that, although Ms. Brown had a right to file, Ms. Brown's former employer could challenge the alleged wrongdoing for being untimely and the EEOC could dismiss the charges. (*Id.*) Ms. Brown states that she understood Ms. Hodge's comments to mean that the EEOC was refusing to accept her claim, and Ms. Brown took no further steps to pursue her charges at the EEOC. (Doc. No. 1, at 5; Aff. Brown, Doc. No. 7, at 3.)

On July 28, 1993, Ms. Brown initiated the present lawsuit in federal court. (Doc. No. 1.)

On August 30, 1993, Ms. Brown returned to the EEOC to request that she be issued a Notice of Right to Sue letter. (Aff. Brown, Doc. No. 7, at 3.) Ms. Brown states that EEOC employee Lilli Fletcher advised Ms. Brown that Ms. Brown should have her attorney submit a written request to the EEOC for the Notice. (*Id.*) Ms. Brown's attorney submitted the request on August 31, 1993 (Ex. A, Attach. Aff. Brown, Doc. No. 7), and Ms. Brown received a Notice of Right to Sue letter from the EEOC on September 7, 1993 (Ex. B, Attach. Aff. Brown, Doc. No. 7; Ex. B, Attach. Def's Reply Pl.'s Resp. Mot. Dismiss, Doc. No. 11).

On September 2, 1993, PCA filed a Motion to Dismiss Ms. Brown's claims under Fed. R.Civ.P. 12(b)(1) and 12(b)(6) on the grounds that Ms. Brown failed to exhaust her administrative remedies before filing her claim of unlawful sex discrimination, and that the Court lacks jurisdiction to hear Ms. Brown's claim of constructive discharge. (Doc. No. 3, at 1–2.) Ms. Brown filed a Response in opposition to PCA's Motion to Dismiss (Doc. No. 6) on September 8, 1993. In Ms. Brown's Response, she contends that PCA's argument regarding her alleged failure to exhaust administrative remedies should be disregarded given that Ms. Brown has received a Notice of Right to Sue letter from the EEOC. (Doc. No. 6, at 7.) Moreover, she asserts that PCA was notified prior to filing its Motion that the EEOC would be providing the Notice to Ms. Brown, and that the Court should thus assess costs and attorney's fees on PCA for filing its Motion. (*Id.* at 8–9.)

On September 21, 1993, PCA filed a Reply to Ms. Brown's Response in opposition, as well as a Further Motion to Dismiss on Basis of Statute of Limitations (Doc. No. 11). Specifically, PCA argues that Ms. Brown's claims should be dismissed because she failed to exhaust administrative remedies and did not file a claim with the EEOC within 300 days of the allegedly discriminatory conduct. (*Id.* at 3–9.) As well, PCA claims that the Court lacks jurisdiction to hear Ms. Brown's constructive discharge claim separately. (*Id.* at 9.) PCA contends that Ms. Brown's request for sanctions is meritless and in turn requests sanctions against Ms. Brown for attorney's fees and costs. (*Id.* at 9–12.)

## II. DISCUSSION

Under 42 U.S.C. § 2000e *et seq.*, Title VII of the Civil Rights Act of 1964, it is illegal for an employer to discriminate against any individual with respect to the compensation, terms, or conditions of the individual's employment because of the individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2. In order for an aggrieved individual to bring a claim under 42 U.S.C. § 2000e, she must first file a timely charge with the EEOC. Specifically, § 2000e–5 provides:

(1) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency. 42 U.S.C. § 2000e–5(e) (Supp.1992).

Moreover, the Act provides that no charge may be filed with the EEOC until sixty days have elapsed from the time a charge is initially filed with a State or local agency. 42 U.S.C. § 2000e–5(c).

### A. Exhaustion of Administrative Remedies

After a complainant files a complaint and exhausts the administrative process mandated under the Act, she may file suit in federal court. 42 U.S.C. § 2000e–5(f). If a complainant brings a civil suit without first exhausting administrative remedies, the district court may dismiss the lawsuit. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393–98, 102 S.Ct. 1127, 1132–34, 71 L.Ed.2d 234 (1982), *reh'g denied*, 456 U.S. 940, 102 S.Ct. 2001, 72 L.Ed.2d 461 (1982).

In the present case, PCA argues that Ms. Brown failed to file a charge of discrimination prior to bringing her lawsuit and thus failed to exhaust her exhaust administrative remedies. It is undisputed that an EEOC

investigator interviewed Ms. Brown and filled out EEOC document "Inquiry To Be Filed In 60–Day File" on April 28, 1993. As well, during Ms. Brown's visit to the EEOC Ms. Brown completed an EEOC "Intake Questionnaire," specifying the date of the alleged discrimination (April 21, 1993), the alleged wrongdoer (Packaging Corporation of America), and the alleged circumstances giving rise to the complaint ("Was not advanced to supervisor [because] I am a female."). However, Ms. Brown did not pursue her claim further with the EEOC and did not receive a Notice of Right to Sue prior to bringing her lawsuit.

The central issue underlying PCA's argument is whether Ms. Brown's actions at the EEOC on April 28, 1993 constituted the filing of a "charge" sufficient to satisfy the conditions specified under the Act. This issue has recently been examined in *E.E.O.C. v. Dillard Dep't Stores, Inc.,* 768 F.Supp. 1247 (W.D.Tenn.1991). In *Dillard,* the EEOC brought a Title VII claim on behalf of a complainant who was alleging that he had been discharged because of his race and religion. 768 F.Supp. at 1248. Although the complainant was interviewed by an EEOC investigator and had completed an Intake Questionnaire in a timely manner, he did not sign or verify the Intake Questionnaire and had failed to file a formal charge within the statutory period. *Id.* The defendant employer moved for Summary Judgment on the grounds that the complainant's charge was not timely filed. *Id.*

Finding that an EEOC Intake Questionnaire is sufficient to constitute a "charge" if properly amended and verified such that it satisfies EEOC requirements, the *Dillard* court denied the defendant employer's motion. *Dillard,* 768 F.Supp. at 1251–52. While the court acknowledged that, "[u]nder Title VII, 'charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires,'" 768 F.Supp. at 1250 (quoting 42 U.S.C. § 2000e–5(b)), it also noted that a complainant may cure an initial failure to verify an intended charge. 768 F.Supp. at 1250. As the federal regulation

governing the contents of an EEOC charge provides:

> [A] charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of. A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegation made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the original charge will relate back to the date the charge was first received.... 29 C.F.R. § 1601.12(b).

Thus, where the complainant went to the EEOC to file a charge; had completed an Intake Questionnaire that identified the complainant, the defendant, and the alleged discriminatory conduct; and had later submitted an affidavit which verified that he had filled out the Intake Questionnaire, the complainant's actions were sufficient to satisfy the "charge" filing requirement. *Dillard,* 768 F.Supp. at 1251 n. 1, 1252. Moreover, the court found the charge to have been filed at the time the Intake Questionnaire was completed. *Id.* at 1252. All other amendments, including the verifying affidavit, related back to the date the Intake Questionnaire was completed. *Id.*

Like the complainant in *Dillard,* in the present case Ms. Brown went to the EEOC to bring charges against her former employer. As well, she completed an Intake Questionnaire which identified Ms. Brown as the complainant, PCA as the defendant, and the failure to promote her to supervisor as the alleged discriminatory act. Ms. Brown signed the Intake Questionnaire, and subsequently submitted an affidavit attesting to the fact that she visited the EEOC on April 28, 1993. This Court received the Intake Questionnaire completed by Ms. Brown as an attachment to the Affidavit of John Pahmeyer, Area Director of the Nashville Area Office of the EEOC and custodian of records for that office. Mr. Pahmeyer stated in his Affidavit that Ms. Brown was interviewed by his office on April 28, 1993, and that Ms.

Brown completed the Intake Questionnaire on that date. On September 7, 1993, Ms. Brown received an EEOC Notice of Right to Sue.

■ Adopting the *Dillard* analysis, this Court finds that Ms. Brown's completed Intake Questionnaire, as subsequently amended and verified, suffices as a "charge" for Title VII filing purposes. All amendments alleging additional acts not apparent on the face of Ms. Brown's Intake Questionnaire, including Ms. Brown's claim for constructive discharge, relate back to April 28, 1993, the date Ms. Brown satisfied the charge-filing requirement. Since Ms. Brown filed a charge alleging discrimination with the EEOC on April 28, 1993, and cured any remaining exhaustion deficiencies by acquiring a Notice of Right to Sue on September 7, 1993, this Court rejects PCA's assertion that this Court lacks jurisdiction due to Ms. Brown's alleged failure to exhaust administrative remedies.[1]

## B. Statute of Limitations

■ Defendant PCA further challenges Ms. Brown's lawsuit on the grounds that she did not file an EEOC charge within 300 days of the alleged discriminatory conduct as required under 42 U.S.C. § 2000e–5(e). In circumstances where a complainant is alleging that she has not been promoted, an employer's alleged discriminatory practices may be scrutinized under the "continuing violation doctrine." *See Roberts v. North Am. Rockwell Corp.*, 650 F.2d 823, 826 (6th Cir.1981). Under the continuing violation doctrine, an employer engaging in a pattern of discriminatory conduct is continually violating Title VII. *Id.* Thus, the limitations period commences upon the last discriminatory act, and a complainant who has allegedly suffered a pattern of discrimination may file charges for all acts suffered so long as the last related act occurred within the statutory period. *Id.*

at 826–28; *Held v. Gulf Oil Co.*, 684 F.2d 427, 430 (6th Cir.1982).

■ It is well-settled that the statutory period for filing an EEOC charge begins to run on the date that a complainant has knowledge that the alleged discrimination has occurred. *See Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (filing limitation commenced when negative tenure decision made and communicated to employee); *Janikowski v. Bendix Corp.*, 823 F.2d 945, 947 (6th Cir. 1987) (cause of action accrued when employee received notice of termination, not when employment ceased); *E.E.O.C. v. Firestone Tire & Rubber Co.*, 650 F.Supp. 1561, 1565 (W.D.Tenn.1987) (cause of action accrues when alleged discrimination occurred and alleged discriminatees are notified of it). Moreover, absent equitable considerations [2] the statute of limitations begins running when a complainant has knowledge of the discriminatory conduct, not when the complainant discovers at some later point that the conduct infringes on a legal right. *See Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir.1984) (statute of limitations for § 1983 claim began running when plaintiff allegedly signed document under threat, not when plaintiff subsequently consulted attorney).

■ In the present case, Ms. Brown alleges that she was not made aware of her supervisor's discriminatory conduct in not forwarding her application for the plant supervisor's position until she spoke with Mr. Cihlar on April 21, 1993. Thus, for purposes of commencing the statute Ms. Brown was not notified of the conduct giving rise to her injury until April 21, 1993. Moreover, Ms. Brown alleges facts suggesting that PCA was engaged in a pattern of discriminatory conduct against her. She states that she performed numerous tasks beyond the parameters of her position as secretary to Mr. Rusnaczyk and was uncompensated for such

---

1. This Court also notes that PCA misconstrues the exhaustion requirements provided under the Act. *See, e.g.,* Def.'s Reply Pl.'s Resp. Mot. Dismiss, at 4 ("... jurisdictional prerequisites in Title VII...."), 4 n.3 ("... two jurisdictional prerequisites for filing a Title VII lawsuit...."). Filing a timely charge with the EEOC is not a jurisdictional prerequisite to bringing suit in fed-

eral court. *Zipes,* 455 U.S. at 393, 102 S.Ct. at 1132. Indeed, the timely filing requirement is analogous to a statute of limitations in that it is subject to waiver, estoppel, and equitable tolling. *Id.*

2. *See Zipes,* 455 U.S. at 393, 102 S.Ct. at 1132.

598

tasks; failed to receive promised salary increases; and was not considered for a promotion for which she applied and was qualified. Under the continuing violation doctrine, Ms. Brown may bring suit against PCA for all acts related to the pattern of discrimination about which she was made aware on April 21, 1993.

Because the statute of limitations for Ms. Brown's charge began to run on April 21, 1993, and as discussed above Ms. Brown filed a charge with the EEOC on April 28, 1993, this Court finds that Ms. Brown satisfied the 300-day statutory filing requirement.

### C. Rule 11 Sanctions

Under Fed.R.Civ.P. 11, attorneys have an affirmative duty to make a reasonable investigation to ensure that all pleadings, motions, and other papers are well-grounded in fact and existing law, or are submitted in good faith for the extension or modification of existing law. Fed.R.Civ.P. 11. Attorneys may not submit papers to harass, cause unnecessary delay, or needlessly increase the cost of litigation. *Id.* If an attorney submits papers in violation of Rule 11, a court may impose appropriate sanctions, including a reasonable attorney's fees. *Id.*

In the present case, each party has requested that the Court impose sanctions under Fed.R.Civ.P. 11 against the other party. With the possible exception of the gratuitous cross-requests for sanctions themselves, this Court finds nothing in the pleadings of either party which would warrant Rule 11 sanctions. Thus, the Court rejects as meritless the request of each party for sanctions.

### III. CONCLUSION

For the above-stated reasons, the Court hereby DENIES Defendant's Motion to Dismiss. Furthermore, the Court DENIES Plaintiff's and Defendant's requests for the imposition of attorney's fees and costs on each other.

An order consistent with the findings herein is filed contemporaneously.

### *ORDER*

Pending before the Court is Defendant's Motion to Dismiss (Doc. No. 3), to which

Plaintiff has filed a Response in opposition (Doc. No. 6). Defendant has filed a Reply to Plaintiff's Response to Defendant's Motion to Dismiss and Further Motion to Dismiss on Basis of Statute of Limitations (Doc. No. 11).

Consistent with the contemporaneously-filed Memorandum, the Court hereby DENIES Defendant's Motion to Dismiss. Furthermore, the Court DENIES Plaintiff's and Defendant's requests for the imposition of attorney's fees and costs on each other.